UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DESTINATION PRODUCTS INTERNATIONAL LTD., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:07-CV-1979-G |
| WILSON TRANSPORTATION, INC., ET AL., | ) ) ) | **ECF** |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the motions Arlington Mid-Cities Warehouse, Inc. d/b/a AM-C Warehouse, Inc. ("AMC") to (1) dismiss for lack of subject matter jurisdiction; (2) dismiss for lack of personal jurisdiction; (3) dismiss for failure to state a claim upon which relief can be granted; and (4) dismiss the cross-claims filed by defendant, Wilson Transportation, Inc. ("WTI") and Wilson & Sons Trucking Company, Inc. ("Wilson") (or collectively, "WTI/Wilson"). For the reasons stated below, DPI's federal claim against Wilson is dismissed with prejudice, and DPI's remaining state law claims are dismissed without prejudice to their being refiled in state court.

I. BACKGROUND

Plaintiff Destination Products International, Ltd. ("DPI"), a Canadian corporation, is a cargo shipper. Complaint at 1. WTI and Wilson, Kansas corporations, and AMC, a Texas corporation headquartered in Grand Prairie, Texas, are also common carriers. *Id*. at 2.

On or before January 5, 2005, AMC received 1,381 cases of frozen enchilada kits from DPI. *Id*. at 4; Plaintiff's Brief in Response to Defendant A M-C Warehouse's Rule 12 Motions to Dismiss ("Response") at 4. DPI had contracted with AMC to "properly store and load the cargo of enchiladas, to properly instruct and communicate instructions to the interstate carrier, and to assure proper temperature maintenance of the cargo during their custody of the same." Complaint at 4. AMC agreed to store the frozen enchiladas a temperature of zero degrees Fahrenheit and deliver to an interstate carrier for safe transit from Grand Prairie to Kansas City, Missouri. *Id*. at 4; Response at 4. WTI/Wilson was the designated carrier. *Id*. Thus, AMC prepared an interstate bill of lading ("DPI bill of lading") which specified that the cargo was to be maintained at a temperature of zero degrees Fahrenheit or below during carriage. Complaint at 4.

AMC then delivered two sets of bills of lading to WTI/Wilson. *Id*. One was the DPI bill of lading, and the other was a bill of lading for cargo requiring a maximum temperature of thirty-eight degrees Fahrenheit. *Id*. AMC placed the latter

bill of lading on top.  *Id*.  DPI claims that AMC then placed the enchiladas requiring a temperature of zero degrees Fahrenheit in the same WTI/Wilson container as the cargo requiring temperature at thirty-eight degrees Fahrenheit.  Complaint at 4; Response at 4.  DPI also claims that WTI/Wilson loaded the two cargoes.  Complaint at 7.  DPI alleges that "AMC permitted the enchilada cargo to depart their premises at the higher of the two temperatures designated for the two cargoes enclosed within the single container (38 degrees F)," thereby violating its contractual duties to DPI.  Complaint at 4.  WTI/Wilson carried the two cargoes enclosed in a single container to Kansas City, Missouri, at the higher temperature.  *Id*. at 4-5; Response at 4.  DPI maintains that WTI/Wilson did not deliver the enchilada cargo to Kansas City as directed in writing (*i.e.*, to maintain the cargo at or below zero degrees Fahrenheit).  Because the enchiladas were transported and stored at thirty-eight degrees, they were thawed upon delivery and thus had to be discarded for health reasons.  Response at 4-5.

On November 27, 2007, DPI sued the defendants, jointly and severally, asserting both federal and state claims, for the delivery of damaged goods.  In its complaint, DPI maintains that defendants AMC and WTI/Wilson are liable under the Carmack Amendment to the Interstate Commerce Act ("Carmack Amendment"), 49 U.S.C. § 14706 *et seq.*, for the damage that occurred during the interstate

shipment of the enchiladas.[1]  Complaint at 4-5.  DPI also asserts that WTI/Wilson was negligent for failing to take adequate precautions, for negligent entrustment of goods to third parties, and for negligent instruction of those they hired.[2]  *Id*. at 5-6.  DPI avers that the defendants breached their contract to provide proper temperature maintenance, prepare proper shipping documents, and properly load and ship the frozen enchiladas at zero degrees Fahrenheit.  *Id*. at 6.  DPI further claims that it had a contract with WTI/Wilson, or was a third party beneficiary to that contract, and that WTI/Wilson breached that contract by failure to provide adequate temperature maintenance for the enchiladas, negligent instruction of subcontractors, and utilization of unsafe equipment during storage and/or carriage.  *Id*. at 7-8.  DPI also sued the defendants for breach of bailment obligation and breach of the duty of care.  *Id*. at 8-9.

---

[1] On June 18, 2008, this court ordered further briefing to clarify issues related to the Carmack Amendment.  As a result, on July 2, 2008, DPI filed a brief in which it contended that it is asserting only state law claims against AMC.  *See generally* Plaintiff's Brief Concerning Carmack Exclusivity and Statutes of Limitation, in Response to the Court's June 18, 2008 Order.  It appears that DPI is asserting one state law claim -- "breach of a Texas bailment contract."  *Id*. at 3.

[2] After court-ordered clarification of the Carmack Amendment issues, it appears that DPI is asserting only the Carmack Amendment claim and not state law claims against Wilson.  *See generally* DPI Clarification Brief.  To the extent that DPI is asserting state law claims against Wilson, those state law claims are barred, as the Carmack Amendment preempts state law claims against carriers arising out of the shipment of goods.  See *Schoenmann Produce Co. v. Burlington Northern and Santa Fe Ry. Co.*, 420 F. Supp.2d 757, 763 (S.D. Tex. 2006); *Gulf Rice Arkansas, LLC v. Union Pacific Railroad Co.*, 376 F. Supp.2d 715, 719 (S.D. Tex. 2005); *Berlanga v. Terrier Transportation, Inc.*, 269 F. Supp.2d 821, 830 (N.D. Tex. 2003).

On December 20, 2007, Wilson and WTI filed answered the complaint and filed cross-claims against AMC. Specifically, Wilson/WTI asserted that any damage was due to the sole negligence of AMC. Defendants Wilson Transportation, Inc. and Wilson Sons Trucking, Inc.'s Answers to the Complaint, Affirmative Defenses, and Cross-Claims Against AM-C Distributing Co., d/b/a AM-C Warehouse, Inc. at 8. Wilson/WTI also sought indemnity and/or contribution from AMC in accordance with the degree of culpability of each defendant in the event that Wilson/WTI was found liable for the damages suffered by DPI. *Id*.

AMC moves to (1) dismiss for lack of subject matter jurisdiction; (2) dismiss for lack of personal jurisdiction; (3) dismiss for failure to state a claim upon which relief can be granted; and (4) dismiss the cross-claim filed by WTI/Wilson.

## II. ANALYSIS

### B. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. See *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994); *Owen Equipment and Erection Company v. Kroger*, 437 U.S. 365, 374 (1978). A federal court may exercise jurisdiction over cases only as expressly provided by the Constitution and laws of the United States. *See* U.S. CONST. art. III §§ 1-2; see also *Kokkonen*, 511 U.S. at 377. Federal law gives the federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.

§ 1331. Moreover, a party seeking relief in a federal district court bears the burden of establishing the subject matter jurisdiction of that court. *United States v. Hays*, 515 U.S. 737, 743 (1995); *McNutt v. General Motors Acceptance Corporation of Indiana, Inc.*, 298 U.S. 178, 189 (1936); *Langley v. Jackson State University*, 14 F.3d 1070, 1073 (5th Cir.), *cert. denied*, 513 U.S. 811 (1994).

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of a case for lack of jurisdiction over the subject matter. *See* FED. R. CIV. P. 12(b)(1). A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court before any other challenge because "the court must find jurisdiction before determining the validity of a claim." *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted); see also *Ruhrgas AG v. Marathon Oil Company*, 526 U.S. 574, 577 (1999) ("The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception") (citation and internal quotation marks omitted). On a Rule 12(b)(1) motion, which "concerns the court's 'very power to hear the case . . . [,] the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *MDPhysicians & Associates, Inc. v. State Board of Insurance*, 957 F.2d 178, 181 (5th Cir.) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)), *cert. denied*, 506 U.S. 861 (1992). In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on: "1) the complaint alone; 2) the

complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great Western Energy Corporation*, 896 F.2d 170, 176 (5th Cir. 1990) (citing *Williamson*, 645 F.2d at 413).

The standard for reviewing a motion under Rule 12(b)(1), however, depends on whether the defendants make a facial or factual attack on the plaintiff's complaint. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). The defendants make a facial attack by the mere filing of a Rule 12(b)(1) motion. *Id.* In that case, the trial court must look at the sufficiency of the allegations in the complaint, which are presumed to be true. *Id.* The defendants make a factual attack, on the other hand, by providing affidavits, testimony, or other evidentiary materials challenging the jurisdiction of the court. *Id.* In a factual attack, the plaintiff also is required to submit facts in support of jurisdiction and has the burden of proving, by a preponderance of the evidence, that the trial court has subject matter jurisdiction over the claims. *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986).

In the instant action, AMC has made a facial attack on the plaintiff's complaint. See *Paterson*, 644 F.2d at 523. Therefore, this court must look to the sufficiency of the plaintiff's allegations in the complaint, presuming each allegation to be true. See *id.* In the complaint, DPI asserts that subject matter jurisdiction is based

upon federal question under the Carmack Amendment and pendent jurisdiction over its state law claims. Complaint at 3. The Carmack Amendment provides a right of action to shippers against motor carriers and freight forwarders for damage occurring during the interstate shipment of property. *See* 49 U.S.C. § 14706(a)(1), (d)(3). Carriers that provide transportation or service for interstate shipment of goods are subject to the Carmack Amendment. *Id.* AMC asserts that it is not a carrier and thus is not subject to the Carmack Amendment. Brief in Support of Motion to Dismiss Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure ("Rule 12(b) Motion") at 1. DPI agrees that AMC is not a motor carrier and that its claims against AMC fall exclusively under state law; thus, DPI avers that the court should exercise pendent jurisdiction over its state law claims against AMC pendent to DPI's federal claim against Wilson. Plaintiff's Brief Concerning Carmack Exclusivity and Statutes of Limitation, in Response to the Court's June 18, 2008 Order ("DPI Clarification Brief") at 4. It is readily apparent that this court has jurisdiction to hear this case based upon the federal question presented. *See* 28 U.S.C. § 1331.

Unless contractually altered, a two year statute of limitations applies to claims under the Carmack Amendment. *Altadis USA, Inc. ex rel. Fireman's Fund Ins. Co. v. Sea Star Line, LLC*, 458 F.3d 1288, 1290 (11th Cir. 2006), *cert. granted*, __ U.S. __, 127 S. Ct. 853, and *cert. dismissed*, __ U.S. __, 127 S. Ct. 1209 (2007). Specifically, the Carmack Amendment provides:

> [a] rail carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice. For the purposes of this subsection -- (1) an offer of compromise shall not constitute a disallowance of any part of the claim unless the carrier, in writing, informs the claimant that such part of the claim is disallowed and provides reasons for such disallowance; and
> (2) communications received from a carrier's insurer shall not constitute a disallowance of any part of the claim unless the insurer, in writing, informs the claimant that such part of the claim is disallowed, provides reasons for such disallowance, and informs the claimant that the insurer is acting on behalf of the carrier.

49 U.S.C. § 11706(e)(1), (2).

The filing requirements are as follows:

> (b) Minimum filing requirements. A written or electronic communication (when agreed to by the carrier and shipper or receiver involved) from a claimant, filed with a proper carrier within the time limits specified in the bill of lading or contract of carriage or transportation and:
> (1) Containing facts sufficient to identify the baggage or shipment (or shipments) of property, (2) asserting liability for alleged loss, damage, injury, or delay, and (3) making claim for the payment of a specified or determinable amount of money, shall be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage; *Provided, however,* That where claims are electronically handled, procedures are established to ensure reasonable carrier access to supporting documents.

49 C.F.R. § 1005.2(b) (emphasis in original).

Strict compliance with the filing requirements is required. *Salzstein v. Bekins Van Lines Inc.*, 993 F.2d 1187, 1189-90 (5th Cir. 1993).

Wilson contends that DPI neither filed a written notice with Wilson within nine months of its claim nor filed its lawsuit within the prescribed two year statute of limitations. Wilson Transportation, Inc. and Wilson Sons Trucking, Inc.'s Memorandum of Law Regarding Carmack Amendment Preemption and Limitations and Federal Jurisdiction over State Law Claims ("Wilson Clarification Brief") at 2. The loss at issue occurred on January 7, 2005, and DPI's claim was dated September 12, 2005. *Id*. at 5; *see also* Standard Form for Presentation of Loss and Damages Claim, *attached to* Wilson Clarification Brief, as Exhibit C. Wilson received DPI's claim on September 14, 2005. Wilson Clarification Brief at 5.[3]

In a letter dated October 12, 2005, Alan J. Howarth ("Howarth"), an attorney for Wilson, urged DPI to "reconsider its position regarding this claim." *See* Letter from Alan J. Howarth to David Cole dated October 12, 2005, *attached to* Wilson Clarification Brief, as Exhibit E. Specifically, Wilson counseled that "[i]f DPI does decide to pursue this claim despite the evidence that the high temperatures upon delivery were caused by the incorrect instruction on the bill of lading for the artichoke

---

[3] Wilson incorrectly calculated this date as beyond the prescribed nine month period in which to file a claim and urges the court to dismiss DPI's Carmack Amendment claim on this ground. *Id*. at 5-6. DPI asserts that it filed its claim three weeks before the October 7, 2005 deadline. DPI Clarification Brief at 9. The court agrees with DPI on this point.

dip, DPI should resubmit the claim for the replacement cost instead of the market value." *Id.* On October 31, 2005, Wilson sent the letter via first class United States mail. Wilson Clarification Brief at 5. In a letter dated January 13, 2006, from DPI attorney Randy J. Sparling ("Sparling") to Howarth, Sparling asked for $55,806.21 for the replacement cost of the enchiladas, plus $720 for handling charges and $912.50 for shipping. *See* Letter from Randy J. Sparling to David Cole dated January 13, 2006, *attached to* DPI Clarification Brief, as Exhibit 3. In a letter dated August 20, 2007, to Howarth, DPI's insurer, Chubb Insurance Company of Canada, demanded that Wilson pay DPI $57,438.71. *See* Letter from Mike D'Annunzio ("D'Annunzio") to Howarth dated August 20, 2007, *attached to* DPI Clarification Brief, as Exhibit 4. In response, Howarth informed D'Annunzio that "Wilson denies any and all liability for this claim." *See* Letter from Howarth to D'Annunzio dated August 28, 2007, *attached to* DPI Clarification Brief, as Exhibit 5.

Wilson asserts that because it sent DPI its denial of liability on October 31, 2005 and DPI did not file this lawsuit until November 27, 2007, this suit is time-barred. Wilson Clarification Brief at 5. On the other hand, DPI contends that the "October 31, 2005 Wilson letter left the claim open, since it asks for the claim to be resubmitted using replacement cost instead of market value." DPI Clarification Brief at 10. On January 13, 2006, DPI resubmitted its claim. *Id*. DPI asserts that the

clear and final denial of its claim occurred in Howarth's August 28, 2007, letter. *Id*. Thus, DPI maintains, its suit was timely filed on November 27, 2007. *Id*.

The court disagrees with DPI on this point. Wilson's October 31, 2005 letter expressly states that "neither the carrier nor Wilson are liable for this claim"[4] and advises that should DPI wish to decide to further pursue its claim, DPI should revise its request for damages. Because this suit was filed more than two years after the denial of DPI's claim against Wilson, DPI's Carmack Amendment claim is time-barred. See *Gulf Rice Arkansas*, 376 F. Supp.2d at 723.

### B. State Law Claims

Federal court jurisdiction exists over an entire action, including state law claims, when the federal and state law claims "'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349 (1988) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). Yet supplemental jurisdiction over state law claims is a "doctrine of discretion, not of plaintiff's right." *Gibbs*, 383 U.S. at 726. Consequently, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide

---

[4] This statement, in the language of 49 U.S.C. § 11706(e), clearly "gives . . . written notice that the carrier has disallowed any part of the claim."

- 12 -

whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon*, 484 U.S. at 350.

When the federal claims are dismissed before trial and only state law claims remain, the balance of factors to be considered under the supplemental jurisdiction doctrine weigh heavily in favor of declining jurisdiction; therefore, the federal court should usually decline the exercise of jurisdiction over the remaining claim and send that claim to a state court. See *id*. at n.7. According to the Fifth Circuit, "[o]ur general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)). Here, the federal claims asserted against Wilson have been dismissed and only state law claims remain.

Because the federal claim was dismissed before trial, the factors of judicial economy, convenience, fairness, and comity suggest that this court ought to decline jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). DPI's state law claims are therefore dismissed without prejudice to it pursuing them in an appropriate state court.

## III.  CONCLUSION

For the foregoing reasons, DPI's federal claim against Wilson is **DISMISSED** with prejudice, and DPI's state law claims are **DISMISSED** without prejudice to their being refiled in an appropriate state court.

**SO ORDERED**.

July 23, 2008.

_____
**A. JOE FISH**
**Senior United States District Judge**